IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GLEN ARMSTEAD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05-0141-CV-W-GAF-SSA |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff filed two applications made under the Social Security Act (the Act). The first is an application for disability insurance benefits under Title II of the Act, 42 U.S.C. §§ 401, *et seq*. The second is an application for supplemental security income (SSI) benefits based on disability under Title XVI of the Act, 42 U.S.C. §§ 1381, *et seq*. Plaintiff's applications were denied initially. On October 25, 2004, following a hearing, an administrative law judge (ALJ) rendered a decision, finding plaintiff was not "disabled" as defined by the Act. On February 2, 2005, the Appeals Council denied plaintiff's request for review. Thus, the ALJ's decision is the final decision of the Commissioner.

When reviewing the Commissioner's decision concerning disability benefits, courts may not decide facts anew, reweigh the evidence or substitute their judgment for that of the Commissioner. *See Brockman v. Sullivan*, 987 F.2d 1344, 1346 (8th Cir. 1993) (citing *Jelinek v. Bowen*, 870 F.2d 457, 458 (8th Cir. 1989)). Rather, the standard of appellate review of the Commissioner's decision is limited to a determination of whether the decision is supported by substantial evidence on the record as a whole. *See Sampson v. Apfel*, 165 F.3d 616, 618 (1999); *Pena v. Chater*, 76 F.3d 906, 908 (8th

Cir. 1996). Substantial evidence is that evidence which reasonable minds would accept as adequate to support the Commissioner's conclusion. *See Williams v. Sullivan*, 960 F.2d 86, 89 (8th Cir. 1992). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *See Gaddis v. Chater*, 76 F.3d 893, 895 (8th Cir. 1996); *Shannon*, 54 F.3d at 486.

To establish entitlement to benefits, plaintiff must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable impairment which has lasted or can be expected to last for not less than 12 months. *See* 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Supreme Court in *Barnhart v. Walton*, 535 U.S. 212 (2002), upheld the Commissioner's interpretation of this statutory definition which requires that the disability, and not only the impairment, must have existed or be expected to exist for 12 months.[1]

The Commissioner's regulations governing determinations of disability set forth a five-step sequential evaluation process which the Commissioner must use in assessing disability claims. *See* 20 C.F.R. § 416.920 (2005). In the first three steps of the process, the ALJ must determine whether plaintiff is engaged in substantial gainful activity, whether he has a medically determinable impairment that is "severe" under the meaning of the Act, and whether plaintiff suffers from an impairment that meets or equals any impairment listed in 20 C.F.R. pt. 404, subpt. P, app. 1. *Id*. A claimant must establish that she is not able to return to her past relevant work at step four of the sequential evaluation process. *See, e.g., Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Anderson v.*

---

[1] Upon review of the record and applicable law herein, the defendant's position is found to be controlling. Much of defendant's brief is adopted without quotation noted.

2

*Shalala*, 51 F.3d 777, 779 (8th Cir. 1995) (it is the claimant's burden, and not the Commissioner's burden, to prove RFC)). If plaintiff makes such a showing, the burden of production shifts to the Commissioner to show that the claimant can perform work existing in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520; 416.920 (2005). The Commissioner may meet this step five burden by relying on the medical-vocational guidelines (guidelines) or vocational expert testimony.

After consideration of the record, the ALJ found that plaintiff had not been engaged in substantial gainful activity during the relevant period. The ALJ next found that plaintiff suffered from degenerative disc disease, an impairment that was severe under the meaning of the Act, but which did not constitute an impairment or combination of impairments listed in or medically equal to one contained in 20 C.F.R. § 404, Subpart P, Appendix 1, Regulations No. 4. The ALJ determined that plaintiff's subjective complaints were not entirely credible in light of his medical history and other evidence. The ALJ determined plaintiff could lift and/or carry 10 pounds occasionally and 5 pounds frequently. He could stand/sit for 6 out of 8 hours, had an unlimited ability to push and pull, could occasionally climb stairs, and needed to be able to sit or stand at his option. While the ALJ determined plaintiff was unable to perform his past relevant work as a certified nurse's assistant, with the help of a vocational expert, he determined plaintiff still retained the residual functional capacity to perform the unskilled jobs of cashier, assembler, and information clerk, which were available in significant numbers in the national economy. The ALJ, therefore, determined that plaintiff was not disabled at step five of the sequential evaluation process.

Plaintiff contends the ALJ improperly discounted plaintiff's allegations of disabling pain. He argues that the ALJ improperly made a single, conclusory statement that plaintiff was not credible,

3

without proper supporting analysis. However, the record reflects that the ALJ followed the five-step sequential order of evaluation set out in 20 C.F.R. § 404.1520, and the factors for evaluating subjective complaints set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984). Having conducted this analysis, the ALJ stated his reasons for determining plaintiff was not credible in his claim he is disabled. The ALJ referenced the fact no physician advised plaintiff to avoid work, the lack of consistent treatment for his alleged complaints, the fact that he was not using prescription medication, and the lack of any objective or clinical evidence supporting his claimed limitations. Where an ALJ specifically discredits a claimant's testimony for stated reasons, the court normally defers to the ALJ's determinations of credibility. *See Russell v. Sullivan*, 950 F.2d 542, 545 (8th Cir. 1991). The ALJ's reasons for finding plaintiff non-credible are supported by substantial evidence in this case.

Plaintiff's treatment history is sparse, and even when plaintiff sought treatment, there was no indication that he was so limited as to be disabled under Social Security rules. First, plaintiff sought treatment only sporadically. Plaintiff's infrequent treatment suggests far more tolerable pain than plaintiff alleged at his hearing. *See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th Cir. 1997) ("[Claimant's] failure to seek medical assistance for her alleged physical and mental impairments contradicts her subjective complaints of disabling conditions and supports the ALJ's decision to deny benefits."). *See also Wilson v. Chater*, 76 F.3d 238, 241 (8th Cir. 1996) (failure to seek medical treatment for alleged back pain was not consistent with a severe or disabling condition). Even when plaintiff was treated, clinical examinations showed that he retained clinically "full" strength. While Drs. Moon and Harrell advised plaintiff to avoid lifting over 10 or 20 pounds at various points in their treatment of him, these appear to have been the only restrictions they felt it necessary to impose. Another physician told

4

plaintiff only to avoid "heavy" lifting. It is significant that no physician who examined plaintiff has found limitations consistent with disability. *See Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 964-65 (8th Cir. 1996) (lack of significant restrictions imposed by treating physicians supported the ALJ's decision of no disability)).

There are also indications that plaintiff may have been even less limited than Drs. Moon and Harrell believed, because there are indications that plaintiff was exaggerating his subjective complaints. In February 2003, consultative examiner Dr. Lofgreen observed that plaintiff appeared to be athletic, and in no distress. In contrast to plaintiff's claim at the hearing that he could not bend, Dr. Lofgreen clearly noted that plaintiff demonstrated the ability to flex at the waist. Dr. Lofgreen's examination of plaintiff revealed little reason to believe that he was limited, prompting Dr. Lofgreen to write that he was "puzzled" as to why plaintiff could claim to be disabled given his benign clinical appearance. In residual functional capacity testing, plaintiff "gave poor effect" and "would not participate significantly" in testing, while showing "self-limited pain behaviors." Moreover, plaintiff's claims at the hearing regarding his subjective limitations had very little support anywhere in the record. For example, the ALJ noted that plaintiff had complained of a need to lie down and to elevate his feet, but no doctor advised plaintiff to do so, and it does not even appear that plaintiff ever mentioned such an alleged need to any of the physicians who examined him. *See, e.g., Zeiler v. Barnhart*, 384 F.3d 932, 936 (8th Cir. 2004) ("Finally, there is no medical evidence supporting Zeiler's claim that she needs to lie down during the day."); *Fredrickson v. Barnhart*, 359 F.3d 972, 977 n.2 (8th Cir. 2004) ("There is no evidence in the record that Fredrickson complained of such severe pain to his physicians or that they prescribed that he elevate his foot or lie down daily."). Before this court, plaintiff claims that he has mental limitations

5

arising from his alleged back pain, but he specifically denied such limitations during his hearing with the ALJ.

Plaintiff argues the ALJ improperly adopted the opinion of consultative physician Dr. Lofgreen over the opinion of his own "treating" physician, Brenda Rogers, M.D., regarding his residual functional capacity. In a short letter on Truman Medical Center letterhead dated September 10, 2003, Dr. Rogers opined that plaintiff was disabled from his past job in construction and physical labor. However, the ALJ was not required to defer to Dr. Rogers' opinion. First, it is not clear from the record that Dr. Rogers ever even examined or treated plaintiff. While plaintiff was treated at Truman Medical Center by Drs. Moon and Harrell, there do not appear to be any examination notes signed by Dr. Rogers. If Dr. Rogers was a non-examining physician who rendered an opinion based on plaintiff's medical records, her opinion is not due deference. *See, e.g.,* 20 C.F.R. § 404.1527(d)(2) (2005) (more weight given long-term treating sources who have opportunity to develop a "longitudinal" view of the individual's impairments). Furthermore, even if Dr. Rogers treated plaintiff, her opinion regarding plaintiff would not have been entitled to controlling weight. The doctor did not express her opinions in terms of plaintiff's medical condition or even work-related limitations, but only stated that plaintiff could not return to his past work in construction.[2] Beside providing no support from plaintiff's treatment notes or records, this is a vocational conclusion that is outside Dr. Rogers' expertise. *See Smallwood v.Chater*, 65 F.3d 87, 89 (8th Cir. 1995) (an opinion as to whether a claimant can find work or be gainfully employed is outside the province of medical doctors and is reserved for vocational experts).

---

[2]Before the Agency, plaintiff testified that his main work was as a certified nurse's assistant, not in the construction industry.

The ALJ cited other additional factors in his determination that plaintiff's complaints of overwhelming pain were non-credible. For example, the ALJ noted that plaintiff had a history of poor work earnings. Given that plaintiff's earnings record shows consistent but relatively low earnings, the ALJ was justified in citing this as a minor factor in calculating plaintiff's credibility. *See Comstock v. Chater*, 91 F.3d 1143, 1147 (8th Cir. 1996) (plaintiff's prior work history characterized by fairly low earnings and significant breaks in employment casts doubt on his credibility); *Pena v. Chater*, 76 F.3d 906, 908 (8th Cir. 1996) (sporadic work record failed to support plaintiff's credibility).

The ALJ identified inconsistencies in the record as a whole which provided a sufficient basis upon which to discount plaintiff's subjective complaints. *See Hutsell v. Sullivan*, 892 F.2d 747, 750 (8th Cir. 1989). The ALJ enjoys a closer position to the testimony in support of an application and his opinion is entitled to deference. *Woolf v. Sullivan*, 3 F.3d 1210, 1213 (8th Cir. 1993).

Having found that plaintiff was only partially credible as to the alleged extent of his impairments, the ALJ then went on to determine plaintiff's residual functional capacity at step four of the sequential evaluation process. The ALJ found that plaintiff had the residual functional capacity to lift and/or carry 10 pounds occasionally and 5 pounds frequently. He could stand/sit 6 out of 8 hours, had an unlimited ability to push and pull, could occasionally climb stairs, and needed to be able to sit or stand at his option. *See McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (the Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations). *See also* 20 C.F.R. §§ 404.1545; 416.945; SSR 96-8p.

7

At step four of the sequential evaluation process, the ALJ determined that plaintiff was unable to perform any of his past relevant work given his limitations. Because plaintiff demonstrated impairments which prevented him from performing his past relevant work, the burden shifted to the Commissioner to produce evidence of some other type of substantial gainful employment plaintiff could perform given his residual functional capacity. *See Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also* 20 C.F.R. §§ 404.1520(f); 416.920(f) (2005).

The ALJ relied on a vocational expert to determine what jobs existing the national economy could be performed by an individual of the plaintiff's age, education, past relevant work experience, and residual functional capacity. The ALJ asked the vocational expert whether a hypothetical person of plaintiff's age, education, skill level, and work history could perform any work in the national economy if he shared plaintiff's residual functional capacity. The vocational expert answered, and the ALJ found, that plaintiff could perform work found in the national economy, such as cashier, assembler, and packager. "A vocational expert's response to a hypothetical question provides substantial evidence where the hypothetical question sets forth with reasonable precision the claimant's impairments." *See Starr v. Sullivan*, 981 F.2d 1006, 1008 (8th Cir. 1992).

Plaintiff argues that the ALJ's hypothetical question to the vocational expert was incomplete because it did not include "non-exertional complaints caused by pain," such as difficulty concentrating and remembering instructions. However, plaintiff specifically told the ALJ he did not feel that he had any mental problems and there is no medical evidence that plaintiff ever complained of, or was treated for, any difficulty concentrating or other mental problems. "Discredited complaints of pain, however,

8

are properly excluded from a hypothetical question so long as the ALJ had reason to discredit them."

*Guilliams v. Barnhart*, 393 F.3d 798, 804 (8th Cir. 2005).

      WHEREFORE, for the reasons stated herein, the Commissioner's decision is affirmed.

                                  /s/ Gary A. Fenner
                                  GARY A. FENNER, JUDGE
                                   United States District Court

DATED:    November 22, 2005